# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

| | |
|---|---|
| ESTATE OF COLTON PETERSON, JULIENA DARLING, and WILLIAM DARLING, | CV 12-123-M-DLC-JCL |
| Plaintiffs, | |
| vs. | FINDINGS & RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| CITY OF MISSOULA, MONTANA; MISSOULA CITY POLICE DEPARTMENT; COUNTY OF MISSOULA, MONTANA; MISSOULA COUNTY SHERIFF'S DEPARTMENT; MISSOULA CITY POLICE CHIEF MARK MUIR, MISSOULA POLICE DETECTIVE DAVID KRUEGER; MISSOULA COUNTY SHERIFF MIKE McMEEKIN, MISSOULA COUNTY SHERIFF'S DETECTIVE JOHN GUNTER, IN THEIR CAPACITY AS AGENTS OF THE MISSOULA CITY POLICE DEPARTMENT AND MISSOULA COUNTY SHERIFF'S OFFICE and DOES 1-25, | |
| Defendants. | |

_____

Colton Peterson ("Peterson") committed suicide on July 27, 2010.

Peterson's estate, his mother, Juliena Darling, and step-father, William Darling (collectively "Plaintiffs") bring this action against several Missoula City and County defendants seeking damages for Peterson's death under 42 U.S.C. § 1983 and various pendent state law theories of recovery. The City of Missoula, Missoula Police Department , and Police Chief Mark Muir (collectively "City Defendants") have moved for partial summary judgment on a number of claims and issues.[1] To the extent the motion is not moot in light of Plaintiffs' response, it should be granted in part and denied in part as set forth below.

I. **Background**

By Plaintiffs' account, the days leading up to Peterson's suicide were tumultuous ones. Dkt. 35, at 4-14. But because the issues presented on the City Defendants' summary judgment motion are primarily legal ones, there is no need to detail those allegations here. Suffice it to say that Plaintiffs accuse the City and County Defendants of violating Peterson's state and federal constitutional rights, and of negligently and wrongfully causing his death.

Plaintiffs filed their lawsuit in July 2012. By the time of the November 28, 2012, preliminary pretrial conference, the City Defendants had filed their motion

---

[1] The only other City Defendant, Missoula Police Detective David Krueger, is not a party to the motion.

for partial summary judgment. Plaintiffs moved for an extension of time within which to respond, explaining that they also hoped "to narrow and clarify their pleadings in light of the motion for partial summary judgment." Dkt. 28, at 3. The Court granted Plaintiffs' motion, and on December 14, 2012, Plaintiffs filed their summary judgment response brief along with an amended complaint.[2] The City Defendants have since filed their reply, and Plaintiffs submitted a surreply at the direction of the Court. Dkt. 37, 41, 42.

Plaintiffs' surreply raises a threshold procedural challenge. As Plaintiffs note, the City Defendants moved for partial summary judgment on portions of the original complaint. Plaintiffs have since filed an amended complaint, however, which supersedes the original complaint in its entirety.[3] Because the summary judgment motion was based on a pleading that has since been superseded, Plaintiffs argue the motion is moot and should be denied on that basis.

As discussed below, a significant portion of the City Defendants' motion is moot in light of the substantive amendments to Plaintiffs' complaint. The few

---

[2] The Amended Complaint was timely under the Court's Rule 16 scheduling order, which established December 14, 2012, as the deadline for amendments to the pleadings. Dkt. 33.

[3] *See e.g. Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("[I]t is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.").

issues that remain are legal ones, much like those typically raised on a motion to dismiss for failure to state a claim or for judgment on the pleadings. For the most part, those outstanding issues have been adequately briefed by way of the City Defendants' reply and Plaintiffs' surreply. To the extent the motion raises issues that have been adequately briefed and pertain equally to the amended complaint, the Court will, in the exercise of its discretion, treat the City Defendants' motion as if it were based on the amended complaint. *See e.g. Shupe v. Cricket Communications Inc.*, 2013 WL 68876 *3 (D.Ariz. 2013).

## II. Summary Judgment Standards

Fed. R. Civ. P. 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1000, 1102 (9th Cir. 2000). Once the moving party has satisfied its burden, the non-moving party must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita*

*Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* And the opponent "may not rest upon the mere allegations or denials of his pleading, but must set forth facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schririo*, 514 F.3d 878, 884-85 (9th Cir. 2008).

### III. Discussion

The City Defendants move for summary judgment on a number of claims and issues, each of which is addressed in turn below.

**A. Standing**

    1. <u>William Darling</u>

In Plaintiffs' original complaint, William Darling ("William") advanced federal and state law claims against the City Defendants. The amended complaint dropped William's § 1983 claims and all but two of his state law claims. As it now stands, William is alleging state law claims for negligent and intentional

infliction of emotional distress. Dkt. 35.

The City Defendants argue that William does not have standing to pursue his two remaining claims because he is not Peterson's legal heir. William married Juliena Darling ("Juliena") after she and Peterson's biological father divorced. Although William is married to Peterson's mother, the City Defendants claim there is no evidence that he ever legally adopted Peterson, who was an adult at the time of his death, and so is not considered an "heir" under Montana's statutes of intestate succession. The City Defendants also point out that William is not the personal representative of Peterson's estate, as that role has been assumed by Juliena.

Under Montana law, all wrongful death and survivorship actions "'must be combined in one legal action, and any element of damages may be recovered only once.'" *Adams v. United States*, 669 F.Supp.2d 1203, 1207 (D. Mont. 2009) (*quoting* Mont. Code Ann. § 27-1-501). "Only one wrongful death action may arise out of an adult's wrongful death, and only the decedent's personal representatives may bring that action." *Adams*, 669 F.Supp.2d at 1207 (*citing Renville*, 101 P.3d at 777). The "jury awards wrongful death damages to all heirs involved by a general verdict and the trial court allocates the proceeds among the heirs." *Adams*, 669 F.Supp.2d at 1207 (*citing Swanson v. Champion Intern.*

*Corp.*, 646 P.2d 1166, 1171 (1982)). Among the damages recoverable in a wrongful death action are damages for loss of consortium and emotional distress. *Dawson v. Hill & Hill Truck Lines*, 671 P.2d 589, 590-93 (Mont. 1983).

Because a cause of action for wrongful death may only be maintained by the personal representative of the decedent's estate, and vests in the heirs of the decedent, the City Defendants maintain that William does not have standing to pursue his claims for negligent and intentional infliction of emotional distress. *See* Mont. Code Ann. § 27-1-513; *Renville v. Fredrickson*, 101 P.3d 773, 778 (Mont. 2004). Plaintiffs concede that William is not Peterson's legal heir, but maintain that he is not claiming any damages as Peterson's heir. Dkt. 36, at 2. Plaintiffs do not dispute that William lacks standing to recover damages for any negligent or intentional infliction of emotional distress inflicted on Peterson, but point out that William has not plead such a claim. Plaintiffs instead maintain that William is only seeking damages for emotional distress he claims to have personally suffered as the result of the City Defendants' negligent and intentional conduct. Dkt. 35, at 27-29.

Although the parties do not articulate it exactly this way, the question raised by way of the pending motion is whether a person who is not the decedent's heir or personal representative may maintain an independent cause of action for

7

negligent and/or intentional infliction of emotional distress. Citing *Nelson v. Hawkins*, 45 F.Supp.2d 1015, 1021 (D. Mont. 1999), William argues that his emotional distress claims are permissible because they are independent causes of action, which are distinct from the wrongful death claim brought by Juliena in her capacity as the personal representative of Peterson's estate, and distinct from any recovery by Peterson's heirs.

In *Nelson*, a mother acting in her capacity as the personal representative of the estate of her son, who was killed in work related accident, brought a survivorship and wrongful death action against her son's employer. *Nelson*, 45 F.Supp.2d at 1016. In addition, both of the decedent's parents alleged a claim against their son's employer for negligent infliction of emotional distress. *Nelson*, 45 F.Supp.2d at 1020. On cross-motions for summary judgment, the court held that "[b]ecause wrongful death and survivorship claims are derivative claims, they [were] barred by the exclusivity provisions of the Montana Workers Compensation Act." *Nelson*, 45 F.Supp.2d at 1020. But the court found that the emotional distress claim was "distinct from a wrongful death claim" and allowed it to go forward because it was "an independent, not derivative, cause of action." *Nelson*, 45 F.Supp.2d at 1020-21. *Nelson* explained that the defendant owed a duty directly to the decedent's parents, whose "interest in freedom from mental

8

distress [was] entitled to legal protection from defendant's conduct." *Nelson*, 45 F. Supp.2d at 1021. *Nelson* characterized the claim an independent cause of action "that acknowledges the duty to avoid inflicting serious or severe mental distress on innocent victims."[4] *Nelson*, 45 F.Supp.2d at 1021.

*Nelson* is thus consistent with the long line of Montana cases recognizing "'negligent infliction of emotional distress' as a compensable tort and an independent cause of action." *Renville*, 101 P.3d at 775. *See also, Sacco v. High Country Independent Press*, 896 P.2d 411 (Mont. 1995); *Treichel v. State Farm Mutual Auto. Ins. Co.*, 930 P.2d 661, 665 (Mont. 1997) (emotional distress claims are independent and non-derivative). While none of these cases is directly on point, *Renville* suggests that because emotional distress claims are not derivative, they may be maintained independently of a wrongful death action by one who is neither an heir nor a personal representative.

In *Renville*, the plaintiff's adult son was killed in a car accident and she sued

---

[4]The Montana Supreme Court has since rejected *Nelson* to the extent it allowed the parents to pursue their independent emotional distress claims even in the face of the Montana Workers Compensation Act's ("the Act") exclusive remedy provision. *Maney v. Louisiana Pacific Corp.*, 15 P.3d 962, 966-67 (Mont. 2000). The Court did not question that emotional distress claims are legally independent causes of action, but simply found their legally independent character was irrelevant to whether they were precluded by the Act's exclusive remedy provision. *Maney*, 15 P.3d at 967.

9

the driver's estate, seeking damages for emotional distress and loss of consortium. *Renville*, 101 P.3d at 775. The plaintiff "did not have standing to bring a wrongful death action under § 27-1-513, MCA, as she was neither [her son's] heir nor his personal representative." *Renville*, 101 P.3d at 778. That role was filled by the decedent's son, who had been named personal representative of his father's estate and successfully prosecuted a wrongful death action against the driver's estate. *Renville*, 101 P.3d at 777. The decedent's son did not, however, pursue any claims on behalf of the plaintiff. *Renville*, 101 P.3d at 778.

Because the plaintiff was not her son's heir or personal representative, the *Renville* court concluded that her derivative "claim for loss of consortium damages failed as a matter of law." *Renville*, 101 P.3d at 778. The court reasoned that "[a]llowing a separate loss of consortium action by someone other than a personal representative would create a multiplicity of lawsuits arising from the same wrongful death," which would contravene the legislature's intent in its 1987 amendment of Mont. Code Ann. § 27-1-501 to have survivorship and wrongful death actions brought together. *Renville*, 101 P.3d at 778. But the court did not apply the same logic to the plaintiff's emotional distress claim, which it recognized was "an independent cause of action." *Renville*, 101 P.3d at 775. While the court apparently agreed that the plaintiff was theoretically entitled to

10

pursue such a claim, it concluded as a matter of law that her emotional distress did not rise "to the level of a compensable claim" under *Sacco*. *Renville*, 101 P.3d at 776-77. Because "severe emotional distress could not be found" based on the evidence of record, the court affirmed the district court's dismissal of the claim on summary judgment. *Renville*, 101 P.3d at 777.

The City Defendants nonetheless argue that independent claims for negligent and intentional infliction of emotional distress simply do not exist in the context of a wrongful death action. For support, they cite a Colorado appellate court case in which a mother sought damages for the wrongful death of her daughter and for negligent infliction of emotional distress. *Milllican v. Wolfe*, 701 P.2d 107, 108 (Colo. App. 1985). The court upheld the jury's monetary award on the mother's negligent infliction of emotional distress claim on the principle that she was entitled to recover for "the emotional distress that resulted from her being present when her daughter was injured." *Millican*, 701 P.2d at 109. But the court rejected the mother's argument that she should also be allowed to "recover all of the damages caused by the death of her daughter in her negligent infliction of emotional distress claim." *Millican,* 701 P.2d at 108-09. The court held that a wrongful death action was the mother's "sole remedy for the damage she sustained because of her daughter's death," and limited those damages "to net pecuniary loss

11

suffered by the survivors." *Millican*, 701 P.2d at 109.

*Millican* is of little help here. For one thing, the Montana Supreme Court has eliminated the bystander analysis applied in *Millican*, pursuant to which an emotional distress claim would be derivative of the victim's death. *Treichel*, 930 P.2d at 664-65. And unlike the mother in *Millican*, William does not have standing to bring a wrongful death or survivorship claim. He does, however, have standing to assert independent, non-derivative claims for the emotional distress he alleges he suffered as the result of the Defendants' conduct.

The Legislature's "primary purpose" in requiring that all survivorship and wrongful death claims be combined in one lawsuit "was to prohibit double recovery in wrongful death and survivor actions." *Hern v. Safeco Ins. Co. of Ill.*, 125 P.3d 597, 605 (Mont. 2005). Because William does not have standing to seek emotional distress damages in the wrongful death action as an heir or personal representative, there is no risk of a double recovery if he is allowed to pursue his independent claims for negligent and intentional infliction of emotional distress. Whether William has adequately pled his emotional distress claims or can ultimately prevail on them is entirely separate question.

The sole basis of the City Defendants' summary judgment motion is that because William is not Peterson's heir or personal representative, he does not have

standing to pursue claims for negligent or intentional infliction of emotional distress. For the reasons set forth above, however, the Court concludes otherwise and recommends that this portion of the City Defendants' motion be denied.

### 2. Peterson's Brothers

When Plaintiffs amended their complaint, they added references to Peterson's brothers, Dustin and Travis, as "surviving heirs" for whose benefit the wrongful death action is being brought. Dkt. 35, at 20 & 24. The City Defendants thus read the amended complaint as having added "federal and state law claims on behalf of Colton Peterson's brothers, Dustin and Travis Peterson." Dkt. 37, at 5. According to Defendants, however, "Colton Peterson's brothers are not legal heirs for whose benefit a wrongful death claim may be maintained." Dkt. 37, at 5. Defendants therefore maintain that Peterson's brothers lack "standing to pursue claims or to have claims pursued for their benefit in this matter" and move for "summary judgment on their claims." Dkt. 37, at 6.

On this particular point, the Court agrees that the City Defendants' motion is procedurally flawed. The original complaint made no reference to Peterson's brothers, which means that the City Defendants raised this argument for the first time in their reply brief. Although Plaintiffs filed a surreply, the issue has not been properly presented or fully briefed. Court declines to issue a ruling until

13

those two things have been accomplished by way of a new motion for summary judgment.

### B. Missoula Police Department

The City Defendants argue that all of Plaintiffs' federal and state claims against the Missoula Police Department should be dismissed because the Police Department is not a person within the meaning of 42 U.S.C. § 1983, and does not have the capacity to be sued as a separate legal entity under state law.

Plaintiffs concede that the Police Department is not a person within the meaning of § 1983, and have amended their complaint accordingly to remove all mention of the Police Department from their federal claims. Dkt. 36, at 2; Dkt. 35, at 14-23. The City Defendants motion for summary judgment as to those federal claims is therefore moot.

While Plaintiffs clearly agree that the Police Department is not subject to suit under § 1983, they do not specifically respond to the City Defendants' argument that their state law claims are also barred despite having had ample opportunity to do so.

Montana law establishes a statutory structure for imposing liability on state, local, or municipal governmental entities or bodies. In certain situations, a "government entity" is subject to liability for its torts and those of its

employees...." Mont. Code Ann. §2-9-102. A "governmental entity" means the State of Montana and its "political subdivisions." Mont. Code Ann. § 2-9-101(3). A "political subdivision" is "any county, city, municipal corporation, school district, special improvement or taxing district, or other political subdivision or public corporation." Mont. Code Ann. § 2-9-101(5). This definition of a "political subdivision," created for the purposes of allowing tort liability, does not include a city's police department. It is thus evident that the Missoula Police Department is not a separate entity with the capacity to be sued, and Plaintiffs do not argue otherwise. Because the Missoula Police Department lacks the capacity to be sued as a separate legal entity under state law, Plaintiffs' state law claims against the Missoula Police Department are properly dismissed.

### C. Statutory Immunity

The City Defendants move to summarily dismiss Plaintiffs' state law claims against Missoula City Police Chief Mark Muir on the ground that he is entitled to statutory immunity under Mont. Code Ann. § 2-9-305(5). Plaintiffs concede that Muir has statutory immunity, and "have filed a First Amended Complaint to so clarify." Dkt. 36, at 2. This portion of the City Defendants is thus moot.

### D. No Constitutional Right of Recourse

In their original complaint, Plaintiffs alleged "a right to seek recourse for

15

the violation of Colton Peterson's Montana Constitutional rights." Dkt. 1, at 11. Citing *Meech v. Hillhaven West, Inc.*, 776 P.2d 488 (Mont. 1989), the City Defendants moved for summary judgment as to this portion of Plaintiffs' complain on the ground that Article II, § 16 of the Montana Constitution does not create a fundamental right of full legal redress. Dkt. 20, at 12. Plaintiffs agree, and have eliminated any mention of such a right from their amended complaint, thereby mooting this portion of the City Defendants' motion. Dkt. 35, at 23-24.

### E. Duty to Arrest

The City Defendants move to summarily dismiss Plaintiffs' claims to the extent they are "based on an alleged failure to arrest Colton Peterson or others for alleged criminal activity." Dkt 20, at 14. As Plaintiffs made clear in their response brief, however, they "do not contend that [Missoula Police Department] officers had a duty to arrest Colton Peterson for criminal violations, and have filed a First Amended Complaint to so clarify." Dkt. 36, at 2.

The City Defendants are apparently reluctant to take Plaintiffs at their word, because they point to the fact that the Amended Complaint still alleges that Missoula Police Department "officers could have arrested Colton Peterson for contraband fount in his residence" and "also alleges Fourth Amendment violations and a violation of the search and seizure provisions of the Montana Constitution."

Dkt. 37, at 7. Regardless, the Plaintiffs have expressly disavowed any claim premised on the theory that Missoula Police Department officers had a duty to arrest Peterson. In light of that clarification, the City Defendants motion on this point is moot.

### F. Punitive Damages

The City Defendants move for summary judgment as to Plaintiffs' punitive damages claim against the City of Missoula. The City Defendants argue that the City of Missoula is immune form a claim of punitive damages under Mont. Code Ann. § 2-9-105. Plaintiffs concede that the City Defendants are correct on this point, and have amended their complaint to reflect that they are no longer seeking punitive damages against the City of Missoula. Dkt. 35, at 29. This portion of the City Defendants' motion is properly denied as moot.

## IV. Conclusion

Based on the foregoing,

IT IS RECOMMENDED that the City Defendants' Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART as set forth above.

DATED this 7th day of February, 2013.

Jeremiah C. Lynch
United States Magistrate Judge